IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JADEN GALE,<br>Institutional ID No. 02406952,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHIMDI AKWITTI, *et al.*,<br><br>　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:23-CV-00092-BU[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jaden Gale, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), brings this conditions-of-confinement claim under 42 U.S.C. § 1983 against Warden Chimdi Akwitti and Assistant Warden Phillip McCain. *See* Dkt. No. 17. Defendants now bring a Motion to Dismiss Pursuant to Federal Rule 12(b)(6). Dkt. No. 23.

For the reasons below, the undersigned RECOMMENDS that the Court GRANT Defendants' Motion.

**I.　　JURISDICTION**

Gale brings this action under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3). Venue is proper in the Northern District of Texas, Abilene Division, because the events giving rise to Gale's claims

---

[1] This case was stayed and administratively closed, then reopened and the stay lifted on November 11, 2024. Dkt. No. 22.

occurred at TDCJ's John Middleton Unit in Jones County, Texas. *See* Dkt. No. 1. The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred this case to the undersigned for preliminary screening. Dkt. No. 6; 28 U.S.C. § 636(b)(1)(B).

## II.     FACTUAL BACKGROUND

As alleged, Gale and approximately 220 other inmates were required to sleep on the floor of the gym while at the Middleton Unit.[2] Dkt. No. 1 at 4. Gale was assigned to the gym floor from August 31, 2022, through November 20, 2022—a total of 81 days. *Id*. During that period, he slept directly on the floor without a mattress, in "shoulder reach of the next man" and amid what he described as a "bed of rats." Dkt. No. 13 at 3–4.

Overcrowding in the gym created additional unsanitary and unsafe conditions. All 220 inmates shared only two toilets, which were frequently inoperable and leaked sewage from the bathroom area into the sleeping area. Dkt. No. 1 at 4. Inmates were also required to walk outside at night to the intake building to take cold showers. *Id*. Gale further alleges that fights regularly broke out in the gym and that officers responded by deploying chemical agents, causing all inmates in the gym to suffer breathing difficulties. *Id*.; Dkt. No. 13 at 6. According to Gale, these conditions persisted without improvement throughout his 81-day confinement in the gym. Dkt. No. 13 at 7.

---

[2] Gale is one of at least eleven "gym floor" plaintiffs who allege similar facts. Dkt. No. 17 at 2. Through the Court's review of the gym-floor cases, the Court learned that inmates were assigned to the gym according to an overarching policy of placing inmates with heat restrictions in air-conditioned housing. *Id*. at 3 fn 4. Each plaintiff, including Gale, appears to have had a heat restriction based on a medical condition, a mental health condition, or a prescribed medication, and the gym at the Middleton Unit had air conditioning. *Id*.

Gale brings this action against Defendants in their individual capacities, seeking $45,000 in punitive damages from each defendant. Dkt. Nos. 1 at 5; 17 at 16. He asserts that the conditions were so obviously unconstitutional that subjecting him to them for 81 days warrants punitive relief. Dkt. Nos. 1 at 4–5; 13 at 2. Gale did not file a response to Defendants' Motion to Dismiss.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss: Rule 12(b)(6)

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in the plaintiff's favor, taking "all well–pleaded facts as true" and asking whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016); *see* Fed. R. Civ. P. 12(b)(6). However, the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Although generally the Court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (stating that "the court may consider

3

... matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### B. Exhaustion Under the PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is not jurisdictional, but rather an affirmative defense on which the defendant bears the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.*

The exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *See id*. at 218. The PLRA's exhaustion requirement "is satisfied only if the prisoner 'pursue[s] the grievance remedy to conclusion.'" *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015) (quoting *Wright*, 260 F.3d at 358). "Proper exhaustion requires that the prisoner … comply with all administrative deadlines and procedural rules."

*Johnson v. Kukua*, 342 F. Appx. 933, 934 (5th Cir. 2009) (per curiam) (citing *Woodford*, 548 U.S. at 89–93).

The PLRA contains only "one textual exception to its otherwise stringent exhaustion requirement: availability. Inmates who fail to exhaust can proceed in court by showing that administrative remedies were not 'available.' An administrative remedy is available if it is 'capable of use to obtain some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (cleaned up). A remedy is "not available if 'it operates as a simple dead end, . . .' if it is 'so opaque that it becomes, practically speaking, incapable of use,' or if prison administrators prevent access to it 'through machination, misrepresentation, or intimidation.'" *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020) (quoting *id.* at 643–44).

## IV.   ANALYSIS

Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted on the sole ground that Gale failed to exhaust his administrative remedies as required by the PLRA. "Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105 (1983)). For example, dismissal is appropriate when the allegations contain a date that establishes that relief is barred by the applicable statute of limitations. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

TDCJ's grievance procedures are set forth in the TDCJ Offender Orientation

Handbook.³ Under those procedures, an inmate must file a Step 1 grievance—reviewed by officials at the inmate's assigned facility—within fifteen days of the alleged incident or challenged event. *See* TDCJ's Offender Orientation Handbook at 73–75. If the Step 1 response is unsatisfactory, the inmate has fifteen days to file a Step 2 grievance, which serves as an appeal. *Id.* Substantial compliance is not enough, the inmate must fully and timely comply with both steps prior to filing suit. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

> Gale's complaint alleges the following with respect to exhaustion:
>
> Exhaustion of Grievance Procedures: Have you exhausted all steps of the institutional grievance procedure? YES. (Submitted a grievance back in September 2022. I am still waiting. I have also sent i-60's to the ombudsman in Huntsville, Texas. Those haven't returned either.)
>
> \*\*\*
>
> Several grievances went to [Grievance Officer Layland's] desk as they were "misplaced," either or some have not returned.
>
> \*\*\*
>
> Grievance Officer Layland is guilty for helping the John Middleton Unit cover up their actions by not filing my grievance nor reporting the unconstitutional [conditions] to the higher authorities.

Dkt. No. 1 at 2–4 (cleaned up).

Gale was asked through a questionnaire how he knew the inmates' grievances or

---

³ The undersigned takes judicial notice of the Handbook because it is publicly available online and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *E.g., Cantwell v. Sterling*, 778 F.3d 507, 509 (5th Cir. 2015) (per curiam) (taking judicial notice of the Handbook); see FED. R. EVID. 201(b). The Handbook is available online at: https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf.

gym conditions were not reported to higher authorities. He responded, "Because nothing ever changed." Dkt. No. 13 at 7. When asked to identify the "higher authorities" he believes the conditions should have been reported to, Gale responded, "All of the higher authorities within the Department were aware of what was occurring. Internal Affairs, U.S. Dept. of Justice, Federal Government." *Id*.

Defendants argue that the only logical interpretation of Gale's claim that he filed a grievance in September 2022 is that he submitted a Step 1 grievance at that time—which was never returned—or he improperly filed a Step 2 grievance without first completing Step 1. Dkt. No. 23 at 8. Defendants further contend that even if Gale never received a response to a Step 1 grievance, he was required to proceed to Step 2 rather than abandon the grievance process altogether, and that any allegation of unavailability is conclusory. *Id*. at 8–9. In support, Defendants rely on *Kidd v. Livingston* and *Dean v. Merchant*, cases in which conclusory assertions that the grievance process was defective or unavailable were deemed insufficient. *Id*.

*Kidd* and *Dean* were resolved on summary judgment, where the inmate bears a heightened evidentiary burden. This case, by contrast, is before the Court on a motion to dismiss based on an affirmative defense, where Gale is not even required to plausibly allege that he either exhausted available remedies or was excused from doing so because those remedies were unavailable. As *Jones* clarified, the burden is on the Defendants to establish that the elements of their affirmative defense appears clearly on the face of Gale's pleadings. 549 U.S. at 216.

The first question, then, is whether it clearly appears from Gale's allegations that he failed to file a Step 1 grievance within fifteen days of the alleged incident or challenged event. Such a failure does not clearly appear on Gale's pleadings. Construing reasonable inferences in Gale's favor, he appears to claim to have filed at least a Step 1 grievance.

The second question is whether it clearly appears from Gale's allegations that he failed to file a Step 2 grievance, appealing the results of his Step 1 grievance. Gale's allegations that he filed a grievance but was "still waiting" for the results at the time he filed suit is tantamount to admitting he did not timely complete Step 2 of the TDCJ grievance process. When asked if he exhausted "*all* steps" of the TDCJ grievance procedure (emphasis added), Gale referenced only a single grievance in September 2022 for which he had yet to receive a response when he filed this suit.[4] Otherwise, Gale vaguely references that several grievances were either "misplaced" by the Grievance Officer or "have not returned." Dkt. No. 1 at 3.

These vague assertions that grievances were misplaced or not returned are insufficient to create uncertainty as to whether Gale exhausted his administrative remedies. True, Defendants must also show that remedies were available to Gale. But it clearly appears from Gale's allegations that the TDCJ grievance process was available to him, that he invoked it, and that he was awaiting the outcome when he filed suit.[5] And Gale's vague

---

[4] Assuming Gale additionally filed I-60s, the TDCJ Offender Handbook makes clear that I-60s are not part of the grievance process.

[5] Gale's last day on the gym floor was November 20, 2022. This means he had at the latest until December 5, 2022, to file a Step 1. The Handbook notes that, "[t]he Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond or 45 days for medical grievances." *See* TDCJ's Offender Orientation Handbook at 74. Gale filed this action on May 4, 2023, at which time he

8

allegations of a "cover up" are belied by his admission that "[a]ll of the higher authorities within the Department were aware of what was occurring. Internal Affairs, U.S. Dept. of Justice, Federal Government." Dkt. No. 13 at 7.

## V. CONCLUSION

Because Defendants have demonstrated that Gale's failure to exhaust appears clearly on the face of his pleadings, the undersigned RECOMMENDS that Defendants' Motion be GRANTED.

## VI. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417

---

claims to have been still awaiting a response to his grievance.

(5th Cir. 1996).

## VII. CASE TRANSFER

Having completed the preliminary screening of Gale's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action Number No. 1:23-CV-00092-H.

ORDERED this 18th day of February 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE